UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| **JOHN DISALVO, JOSE TORRES, ALEXANDRA GOTTLIEB, and PETER CAIRNEY,** | CIVIL ACTION NO: 26-CV- 26-274 |
| **Plaintiffs,** | COMPLAINT for DECLARATORY AND INJUNCTIVE RELIEF |
| v. | (42 U.S.C. § 1983; Second Amendment) |
| **THE CITY OF NEW YORK, Jessica S. Tisch, Police Commissioner, in her official capacity, and JOHN AND JANE DOES 1-3 who are THE COMMANDING OFFICER OF THE NYPD LICENSE DIVISION and other supervisors related to gun permits, in his or her official capacity,** | |
| **Defendants.** | |

---

Plaintiffs bring this action by and through their counsel, Susan Chana Lask, Esq, as follows:

## I.  INTRODUCTION

This action challenges the New York City Police Department's prolonged and unjustified delays in administering New York's firearm licensing regime - delays that, in practice, prevent law-abiding citizens from exercising rights protected by the Second Amendment.

New York Penal Law § 400.00 makes possession of a firearm without a license a criminal offense. Recognizing that criminalization places the exercise of a constitutional right entirely in the hands of the licensing authority, the Legislature mandated that firearm license applications shall be granted or denied within six months. In New York City, however, that statutory safeguard has become illusory.

Plaintiffs do not seek to avoid licensing requirements or challenge the existence of a licensing system. To the contrary, Plaintiffs complied with every requirement imposed upon them. Their injury arises solely from NYPD's failure to act for nearly a year after the applications were submitted - leaving Plaintiffs unable to lawfully possess or acquire firearms and exposed to criminal penalties through no fault of their own. Public reporting confirms that thousands of applicants experience similar delays well beyond six months.  Even inquiries from New York City Councilmember Vickie Paladino on behalf of her constituents have gone

1

unanswered.  In effect, Defendants' inaction operates as a *de facto* denial of Second Amendment rights.

Nor does the constitutional injury end upon the eventual issuance of a license. New York City's regulatory scheme requires additional NYPD approvals for each firearm purchase, and ongoing registrations and renewals, yet no statutory or regulatory deadlines for processing those actions exists. Plaintiffs therefore face a recurring and prospective risk that their Second Amendment rights will again be delayed or denied through administrative inaction. These delays are systemic and foreseeable, the product of chronic understaffing, a dysfunctional application system, and policy choices that have allowed persistent backlogs to continue despite the City's collection of millions of dollars annually in firearm licensing fees - resources that could be used to remedy the problem.

Plaintiffs seek prospective declaratory and injunctive relief to halt an ongoing constitutional violation. They do not ask this Court to enforce state law; rather, they challenge the City's administration of its licensing regime insofar as it operates to deny or indefinitely delay the exercise of a core constitutional right, as expressly contemplated by the Supreme Court in *Bruen*.

## II.    JURISDICTION AND VENUE

1. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3)–(4) because this action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983 and the Second and Fourteenth Amendments.

2. Plaintiffs seek declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202. This Court has authority to grant prospective relief against municipal defendants and municipal officials sued in their official capacities pursuant to 42 U.S.C. § 1983.

3. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (b)(2). Defendants reside in this District for venue purposes because the City of New York and its officials are subject to personal jurisdiction throughout the City, and a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District, including Plaintiffs' submission of handgun license applications through their computers in this District, where they reside, and the ongoing deprivation of Plaintiffs' constitutional rights are experienced here as Plaintiffs remain subject to criminal prohibition absent licensure in the venue where they reside.

### III.   PARTIES

4. Plaintiffs John DiSalvo, Jose Torres, and Alexandra Gottlieb and Peter Cairney are law-abiding adult residents of New York City who are eligible under New York law to possess firearms and who submitted firearm-license applications through the NYPD's online portal from their residences in this District.

5. Each Plaintiff completed all required application materials, disclosures, fingerprinting, and firearm training. Each application has remained pending for more than six months and, as of filing, for nearly one year or more, without grant or denial.

6. Defendant City of New York is a municipal corporation responsible for the policies, practices, and customs of the NYPD, including firearm licensing.

7. Defendant Jessica S. Tisch is the Police Commissioner of the City of New York and the final policymaker responsible for administration of the NYPD License Division. She is sued in her official capacity.

8. Defendants John and Jane Does 1–3 are supervisory officials within the NYPD License Division responsible for day-to-day administration of firearm-license applications. They are sued in their official capacities.

9. At all relevant times, Defendants acted under color of state law.

### IV.  FACTUAL ALLEGATIONS

  A. Constitutional Context - Second Amendment

10.  The Second Amendment of the United States Constitution generally protects the right of law-abiding individuals to keep and bear arms, both within their homes and outside of their homes for lawful purposes.

11.  The Second Amendment applies to the States and their political subdivisions by its incorporation through the Fourteenth Amendment's Due Process Clause. *McDonald v. City of Chicago*, 561 U.S. 742 (2010).

12.  In *New York State Rifle & Pistol Ass'n v. Bruen*, the Supreme Court held that licensing regimes may not be administered in a manner that effectively prevents law-abiding citizens from exercising Second Amendment rights and expressly cautioned that even shall-issue regimes may violate the Constitution where lengthy wait times deny ordinary citizens their right to carry firearms. 142 S. Ct. 2111, 2138 n.9 (2022).

13. Prolonged and indefinite administrative delays in the issuance of firearm licenses functionally bar the timely exercise of the right to keep and bear arms and lack any historical analogue consistent with the Second Amendment framework articulated in *Bruen*.

### B. New York City's Licensing Regime

14. Penal Law § 400.00 criminalizes possession of a firearm without a license, making NYPD action a prerequisite to lawful exercise of the right.

15. Penal Law § 400.00 mandates that the licensing authority "shall act upon any application … within six months" of presentment, either by granting or denying the application.

16. In addition to the initial license requirement, New York City Administrative Code § 10-302.1 and the Rules of the City of New York ("RCNY"), Chapter 5, § 5-25 impose further administrative processes after licensure, including a restriction prohibiting the acquisition of more than one firearm within a ninety-day period following a prior acquisition.

17. RCNY Chapter 5 establishes multiple distinct categories of firearm licenses, each requiring a separate application and authorization depending on the class of firearm and the manner of possession, including, among others, premises licenses and carry licenses.

18. RCNY § 5-25(c) and (d) further require that, even after a license has been issued, a licensee must obtain NYPD approval for each firearm by submitting an application for inspection and registration through the NYPD's online portal, including the submission of specified documentation and photographs of the firearm.

19. Every licensee must also repeatedly re-enter the licensing system to retain the ability to lawfully possess firearms. Penal Law § 400.00(10) limits the duration of a firearm license to a period not exceeding three years, and RCNY § 5-02 requires licensees to apply for renewal prior to expiration.

20. Penal Law § 400.00(4-b)'s six-month statutory decision requirement applies only to the initial license application. There is no express statutory or regulatory deadline governing NYPD action on post-license approvals, including firearm acquisition approvals, inspections, registrations, or license renewals.

21. Where a license expires due to NYPD delay in processing a renewal application, the licensee is exposed to criminal liability for continued possession and is effectively prevented from exercising rights protected by the Second Amendment, thereby creating a recurring and prospective constitutional injury.

22. Accordingly, even after an initial firearm license is issued, applicants face ongoing, repeated, and prospective risks of unconstitutional delay within the licensing regime with respect to each additional firearm, each renewal cycle, and each category of firearm for which a separate license or approval is required.

23. The NYPD's open-ended discretion to delay post-license approvals and renewal processing therefore creates a recurrent and prospective deprivation of constitutional rights independent of the initial licensing determination.

C. **Plaintiffs' Delayed Applications**

- **Plaintiff DiSalvo**

24. On March 4, 2025, Plaintiff John DiSalvo used the NYPD online portal to apply for his gun permit license from his home computer in Queens County and the same day the NYPD emailed DiSalvo confirming his application and fee were received, issued an application number and he completed his fingerprint process on March 26, 2025.

25. After 6 months of inaction by the NYPD whether his license was granted or denied, DiSalvo made numerous calls and sent emails to the NYPD licensing department that were all ignored. On October 24, November 12, 24 and 25 and December 10, 2025 DiSalvo emailed the NYPD licensing department requesting an answer, but those emails were ignored. **Exhibit A.**[1]

26. Frustrated with the delay and lack of response, DiSalvo contacted his District Councilmember, Vickie Paladino, whose office contacted the NYPD on December 12, 2025; however, even that elected official's communications was ignored by NYPD. **Exhibit B**

- **Plaintiff Gottlieb**

27. On March 25, 2025, Plaintiff Alexandra Gottlieb used the NYPD online portal to apply for her gun permit license from her home computer in Brooklyn. That day the NYPD emailed Gottlieb confirming his application and fee were received, issued an application number and he completed his fingerprint process on May 29, 2025.

28. After waiting for her license for eight months since her application, on December 2, 2025 Gottlieb sent three emails to various NYPD licensing offices. **Exhibit C**. On December 3, 2025, Gottlieb called the License Division Handgun Section at 646-610-5560, and left a message. Her communications were ignored.

---

[1] Exhibits are redacted to remove confidential information.

- **Plaintiff Torres**

29. On March 15, 2025, Plaintiff Jose Torres used the NYPD online portal to apply for his gun permit license from his home computer in Brooklyn. That day the NYPD emailed Torres confirming his application and fee were received, issued an application number and he completed his fingerprint process on May 29, 2025.

- **Plaintiff Cairney**

30. Plaintiff Cairney illustrates Defendants' post-approval delays. He is an honorably discharged Marine Corps war veteran submitted his firearm license application and fee on May 7, 2024, and only after the office of New York City Councilmember Vicki Paladino contacted the NYPD on his behalf did Defendants respond and approve his application in September 2025. **Exhibit D-**7/10/25 Cairney email to NYPD, copying Eric Forte of Councilmember Paladino's office. Notwithstanding that approval and all documents properly submitted to NYPD, Defendants have failed to issue and deliver Plaintiff Cairney's license to date, thereby preventing him from taking possession of a firearm he has lawfully purchased.

31. Plaintiffs further experienced that the NYPD's online portal is consistently slow and unreliable, materially impeding the submission and processing of applications.

32. Plaintiffs remain unable to lawfully possess or acquire firearms solely due to NYPD inaction.

**D. Public Reports of Systemic Violations and Administrative Failure**

33. Public reporting indicates that concealed-carry applications were approximately 6,751 in 2023. https://gothamist.com/news/more-new-yorkers-are-applying-for-gun-permits-the-nypd-wont-say-how-many-they-granted.  Despite the statutory requirement of a decision within six months, reporting focused on the immediate post-*Bruen* period shows that timely adjudication was the exception rather than the rule. In the six months following *Bruen* (late June through December 2022), the NYPD reportedly received nearly 5,000 handgun license applications but approved only approximately 503 within six months. https://www.thecity.nyc/2023/07/23/nypd-gun-permit-approvals-bruen-supreme-court-ghost/ .

34. NY1 reported that there were 9,432 applications in 2024. https://www.shootingnewsweekly.com/quote-of-the-day/nypd-doesnt-want-to-disclose-how-many-gun-permits-theyve-issued-for-some-reason/ .  Public reporting also reflects that the NYPD has declined to release comprehensive, current data identifying how many applications are adjudicated within the statutory period or the size of the pending backlog, further supporting the inference that untimely

adjudication is ongoing. https://www.shootingnewsweekly.com/quote-of-the-day/nypd-doesnt-want-to-disclose-how-many-gun-permits-theyve-issued-for-some-reason/.

35. Councilmember Paladino has confirmed in her Queens District that she has received 25-30 complaints from constituents in the past year regarding the NYPD's failure to act o on their firearm applications for over six months. **Exhibit E**.

36. Taken together, these publicly reported figures plausibly support Plaintiffs' allegation that Defendants maintain policies or practices that routinely result in adjudications beyond the six-month deadline imposed by Penal Law § 400.00(4-b).

37. Despite awareness of prolonged delays, Defendants have maintained chronic understaffing and failed to allocate licensing-fee revenue toward correcting systemic deficiencies.

### D. Fee Revenue and Available Resources

*38.* For Fiscal Year 2026, the NYPD's operating budget is approximately $6.14 billion, exclusive of pension obligations, fringe benefits, and debt service, as reflected in the New York City Council's Report on the Fiscal Year 2026 Executive Plan (published March/May 2025). **Exhibit F.**

39.  That budget includes substantial federal funding provided to the NYPD for law enforcement operations. Defendants' receipt and use of federal funds underscores their obligation to administer the City's firearm licensing regime in a manner consistent with the United States Constitution, including the Second Amendment, and does not insulate unconstitutional practices from federal judicial review.

40. NYPD charges an application fee of approximately $340 per firearm license application and for renewal applications. Considering the estimated 5,000 firearm license applications in 2022 and 9,432 applications in 2025, as above reported, multiplied by the $340 application fee, the City collected approximately $1,700,000 in 2022 and $3,206,880 in 2025. Further, there are the renewal fees of $340 the NYPD collects every year as additional revenue in the millions.

41. These revenues of Millions of Dollars in addition to the NYPD's billion-dollar budget show there are sufficient funds to employ additional staff, technological improvements, and modernization of the gun licensing portal, yet Defendants have failed to allocate resources in a manner that would prevent ongoing constitutional harm.

42. The City's extraordinary budget, federal funding, and its continued collection of substantial licensing fees, notwithstanding its failure to timely process applications, support that the delays

are not attributable to unavoidable administrative constraints but to policy decisions within the City's control.

## V. STANDING AND IRREPARABLE HARM WARRANTING INJUNCTIVE RELIEF

43. Plaintiffs have standing because they have not been issued licenses so they may exercise their Second Amendment rights and are subject to an ongoing and mandatory licensing regime that conditions the lawful exercise of their Second Amendment rights on NYPD action and inaction, creating a concrete and particularized risk of future constitutional injury that is neither speculative nor hypothetical.

44. Penal Law § 400.00 criminalizes possession of a firearm absent compliance with the licensing regime, thereby making NYPD action a prerequisite to Plaintiffs' lawful exercise of their Second Amendment rights.

45. Even where an initial license is eventually issued after six months, Plaintiffs remain subject to recurring licensing and approval requirements imposed by RCNY § 5-25 and RCNY § 5-02, including post-license purchase authorizations, inspections, registrations, and mandatory renewals, none of which are governed by any statutory or regulatory deadline binding the NYPD.

46. Because Penal Law § 400.00(10) limits firearm licenses to a maximum duration of three years, every Plaintiff will be required to seek renewal in order to continue lawfully possessing firearms. The 90-day wait period to purchase additional firearms also subjects Plaintiffs to the NYPD regime; thereby re-entering the same licensing system that has already subjected them to prolonged and unjustified delay.

47. This recurring exposure to deprivation establishes standing for prospective relief, as Plaintiffs challenge not merely present violations, but an ongoing licensing system that predictably subjects them to future constitutional injury.

- **Plaintiffs Face Ongoing and Irreparable Harm**

48. The deprivation of a constitutional right, even for a limited period of time, constitutes irreparable harm as a matter of law. Plaintiffs' inability to lawfully acquire, possess, or register firearms during periods of NYPD delay directly interferes with their right to keep and bear arms protected by the Second Amendment.

49. This harm is irreparable because no award of monetary damages can restore Plaintiffs' lost ability to exercise a constitutional right during the period of deprivation.

50. Where NYPD delay causes a license to expire before renewal is processed, Plaintiffs are forced either to surrender firearms or to risk criminal prosecution, a Hobson's choice that itself constitutes irreparable constitutional injury.

51. Absent injunctive relief, Plaintiffs will remain subject to a licensing system that repeatedly conditions their ability to exercise Second Amendment rights on discretionary NYPD action for which no temporal limits exist.

## VI. CAUSES OF ACTION

### COUNT I: SECOND AMENDMENT VIOLATION (42 U.S.C. § 1983)

51. Plaintiffs incorporate all of the foregoing paragraphs as if recited here in full.

52. The Second Amendment protects the right of law-abiding citizens to keep and bear arms.

53. While states and municipalities may impose licensing requirements, such regimes may not be administered in a manner that effectively denies or indefinitely delays the exercise of that right.

54. Defendants' systemic failure to timely process firearm license applications, combined with chronic understaffing, non-responsiveness, and a dysfunctional application portal, operates to deny Plaintiffs the ability to exercise their Second Amendment rights.

55. The prolonged delays described herein constitute an ongoing constitutional violation.

### COUNT II: PROCEDURAL DUE PROCESS (42 U.S.C. § 1983)

56. Plaintiffs incorporate all of the foregoing paragraphs as if recited here in full.

57. Plaintiffs possess a protected liberty interest in the exercise of Second Amendment rights.

58. Defendants condition that liberty on licensure and retain exclusive control over whether and when Plaintiffs may exercise the right.

59. Defendants have failed to provide Plaintiffs with timely determinations even as mandated within their own regime.

60. Prolonged and open-ended delay, where the government alone controls access to a constitutional right and provides no adequate procedural safeguards in its own process, violates the Due Process Clause of the Fourteenth Amendment.

### COUNT III: MUNICIPAL LIABILITY (Monell)

61. Plaintiffs incorporate all of the foregoing paragraphs as if recited here in full.

62. The constitutional violations alleged herein were caused by official policies, practices, and customs of the City of New York, including deliberate decisions regarding staffing, budgeting, and administration of the firearm licensing regime.

63. City policymakers were aware that prolonged delays were occurring and that such delays prevented law-abiding citizens from exercising constitutional rights, yet failed to take corrective action.

64. The City's actions and omissions reflect deliberate indifference to Plaintiffs' constitutional rights.

**DECLARATORY AND INJUNCTIVE RELIEF**

65. Plaintiffs seek a declaration that Defendants' administration of the firearm-licensing regime violates the Second and Fourteenth Amendments.

66. Plaintiffs seek prospective injunctive relief requiring Defendants to implement constitutionally adequate procedures to ensure timely adjudication of license applications and related approvals.

**PRAYER FOR RELIEF**

Plaintiffs respectfully request that the Court:

A. Declare that Defendants' licensing practices violate the Second Amendment;

B. A permanent injunction prohibiting Defendants from implementing its licensing regime governing the issuance of firearm licenses in a manner that violates the Second Amendment, as incorporated by the Fourteenth Amendment;

C. Enter appropriate prospective injunctive relief to halt ongoing constitutional violations;

D. Award Plaintiffs nominal damages for the constitutional violations;

E. Award fees and costs and attorneys' fees pursuant to 42 U.S.C. § 1988; and

F. Grant such other and further relief as the Court deems just and proper.

Dated: January 16, 2026                                        Respectfully submitted,

Law Offices of Susan Chana Lask

/s/Susan Chana Lask
Susan Chana Lask, Esq.
244 Fifth Avenue, #2369
New York, NY 10001
(917) 300-1958
*Counsel for Plaintiffs*