UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

JOHN DISALVO, JOSE TORRES,           CIVIL ACTION NO: 26-CV-00274
ALEXANDRA GOTTLIEB,
PETER CAIRNEY and
CHRISTOPHER BIANCANIELLO,

        Plaintiffs,           FIRST AMENDED COMPLAINT
                             for
        v.          DECLARATORY AND INJUNCTIVE RELIEF
                             (42 U.S.C. § 1983; Second Amendment)

THE CITY OF NEW YORK, Jessica S. Tisch,
Police Commissioner, in her official capacity,
and JOHN AND JANE DOES 1-3 who are
THE COMMANDING OFFICER OF THE
NYPD LICENSE DIVISION and other supervisors
related to gun permits, in his or her official capacity,

        Defendants.

---

Plaintiffs bring this action by and through their counsel, Susan Chana Lask, Esq, as follows:

## I.     INTRODUCTION

This action challenges the New York City Police Department's prolonged and unjustified delays in administering New York's firearm licensing regime - delays that prevent law-abiding citizens from exercising rights protected by the Second Amendment.

The Second Amendment guarantees all law-abiding citizens the right to bear arms, and the States must not infringe upon that right, but may impose limited restrictions such as license fees and background checks before issuing a gun license. Otherwise, New York Penal Law § 400.00 makes possession of a firearm without a license a criminal offense. Recognizing the limits of state government and to prevent a Second Amendment violation, under § 400.00, the Legislature mandated a ceiling of no longer than six months for a state actor to grant or deny a gun license application. Yet New York City disregards that statutory safeguard.

Plaintiffs are law-abiding citizens who applied for firearm licenses and complied with every requirement imposed upon them during that six-months. It is now a year and more since applying and NYPD fails to act – preventing Plaintiffs from exercising their Second Amendment Rights to lawfully possess firearms and subjecting them to criminal penalties through no fault of

their own. Plaintiffs are not alone. Public reports confirm that thousands of applicants experience similar delays well beyond six months, and inquiries from New York City Councilmember Vickie Paladino to the NYPD, on behalf of her constituents, are ignored.

Delaying adjudication of firearm applications operates as a *de facto* denial of Second Amendment rights. These delays are systemic and foreseeable - the product of chronic understaffing, a dysfunctional application system, and policy choices creating persistent backlogs despite the City collecting millions of dollars annually in firearm licensing fees and a $6.14 Billion budget, including federal funding, that could be used to remedy the problem.

Plaintiffs seek declaratory and injunctive relief, finding that these delays violate the Second Amendment and to halt this ongoing constitutional violation as the City's administration is exactly the abusive scheme expressly contemplated by the Supreme Court in *Bruen*:

> "because any permitting scheme can be put toward abusive ends, we do not rule out constitutional challenges to shall-issue regimes where, for example, lengthy wait times in processing license applications … deny ordinary citizens their right to public carry."

*New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1, 2138 n.9 (2022).

## II. JURISDICTION AND VENUE

1. Subject-matter jurisdiction exists under 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) by the United States Constitution, 42 U.S.C. § 1983 and the Second and Fourteenth Amendments.

2. Plaintiffs seek declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202. This Court also has authority to grant prospective relief against municipal defendants and officials sued in their official capacities pursuant to 42 U.S.C. § 1983.

3. Venue is proper in this District under 28 U.S.C. § 1391(b)(1)–(2) because Defendants reside here, are subject to personal jurisdiction here, and a substantial part of the events giving rise to the claims occurred here, including Plaintiffs' submission of handgun license applications from their residences in this District and the ongoing deprivation of their constitutional rights, where they remain subject to criminal prohibition absent licensure.

## PARTIES

4. Plaintiffs John DiSalvo, Jose Torres, Alexandra Gottlieb, Peter Cairney and Christopher Biancaniello are law-abiding adult residents of New York City who are eligible under New York

law to possess firearms and who submitted firearm-license applications through the NYPD's online portal from their residences in this District.

5. Each Plaintiff completed all required application materials, disclosures, fingerprinting, and firearm training. Each application has remained pending for more than six months and, as of filing, for nearly one year or more, without a grant or denial or any response to Plaintiffs calls and emails for a year or more.

6. Defendant City of New York is a municipal corporation responsible for the policies, practices, and customs of the NYPD License Division, a unit of the New York City Police Department ("NYPD") that processes and issues firearm licenses and administers investigations, renewals, and compliance under New York Penal Law § 400.00 and related provisions.

7. Defendant Jessica S. Tisch is the Police Commissioner of the City of New York and the final policymaker responsible for administration of the NYPD License Division.

8. Defendants John and Jane Does 1-3 are supervisory officials within the NYPD License Division responsible for day-to-day administration of firearm-license applications.

9. At all relevant times, all Defendants acted under color of state law and are sued in their official capacities

## IV. FACTUAL ALLEGATIONS

### A. Constitutional Context - Second Amendment

10. The Second Amendment of the United States Constitution protects the rights of law-abiding individuals to keep and bear arms, both within and outside of their homes for lawful purposes, and applies to the States and their political subdivisions by its incorporation through the Fourteenth Amendment's Due Process Clause, as held in *McDonald v. City of Chicago*, 561 U.S. 742 (2010).

11. In *New York State Rifle & Pistol Ass'n v. Bruen*, the Supreme Court held that licensing regimes may not be administered in a manner that effectively prevents law-abiding citizens from exercising Second Amendment rights and expressly cautioned that shall-issue regimes may violate the Constitution where lengthy wait times deny law-abiding citizens their right to carry firearms. 142 S. Ct. 2111, 2138 n.9 (2022). Since *Bruen*, New York's licensing framework operates as a shall-issue regime wherein the standard to issue a license is the law-abiding citizen.

12. Plaintiffs are law-abiding citizens, and complain that prolonged and indefinite administrative delays in the issuance of firearm licenses by Defendants past the statutory six-

months[1] functionally bars the timely exercise of the right to keep and bear arms and lacks any historical analogue, consistent with the Second Amendment framework articulated in *Bruen*, , to support such delays.

### B. New York City's Licensing Regime

13. Penal Law § 400.00 criminalizes possession of a firearm without a license, making NYPD action a prerequisite to lawful exercise of the right.

14. Penal Law § 400.00 mandates a time limit that the licensing authority "shall act upon any application … *within six months*" of presentment, either by granting or denying the application.

15. Over four decades ago, in 1980, The New York legislature acknowledged that gun licensure should be expeditious as the commentary to Penal Law § 400.00 affirms:

> "Subdivision 4-b. Processing of License Applications"
>
> Added in 1980 (c. 233 and c. 234), this subdivision [formerly subd. (4-a)] was added to provide for the expeditious processing of licensing requests. This subdivision compels the immediate acceptance of license applications, and action thereon within six months. Delay beyond that period is permissible, but the licensing official bears the burden of justifying it."
>
> N.Y. Penal Law § 400.00 (McKinney).

16. In addition to the original licensing, New York City Administrative Code § 10-302.1 and the Rules of the City of New York ("RCNY"), Chapter 5, § 5-25 impose further administrative processes after licensure, including prohibiting the acquisition of more than one firearm within a ninety-day period following each gun purchase. Therefore, requiring going through the process with NYPD each time a new gun is purchased, and having to wait at least 90-days between each purchase without any deadline in the RCNY when Defendants should adjudicate this.

17. RCNY Chapter 5 also establishes multiple distinct categories of firearm licenses, each requiring a separate application and authorization depending on the class of firearm and the manner of possession, including premises licenses and carry licenses, without any deadline in the RCNY when Defendants should adjudicate this.

18. RCNY § 5-25(c) and (d) require that, after a license has been issued, a licensee must obtain NYPD approval for each firearm by submitting an application for inspection and registration

---

[1] Plaintiffs take no position on Penal Law § 400.00 or any state statute or local law, and limit their complaint to a Constitutional violation of the Second Amendment.

through the NYPD's online portal, including submitting specific documents and photographs of the firearm, without any deadline in the RCNY when Defendants should adjudicate this.

19. Next, Penal Law § 400.00(10) limits the duration of a firearm license to three years, and RCNY § 5-02 requires licensees to apply for renewal prior to expiration, without any deadline in the RCNY when Defendants should adjudicate this.

20. Penal Law § 400.00(4-b)'s six-month statutory requirement applies only to the initial license application, but there is no express statutory or regulatory deadline governing NYPD action on post-license approvals, firearm acquisition approvals, inspections, registrations, or license renewals every three years.

21. Accordingly, every licensee must repeatedly re-enter the licensing system after their initial application is granted to purchase a handgun and retain the ability to lawfully possess it.

22. Delays on these post license procedures expose licensees to criminal liability for continued possession and effectively prevent them from exercising rights protected by the Second Amendment, thereby creating a recurring and prospective constitutional injury.

23. Thus, the NYPD's open-ended discretion to delay post-license approvals and renewal processing creates a recurrent and prospective deprivation of constitutional rights independent of the initial licensing determination, that is a real and continuing Constitutional violation as Plaintiff Cairney illustrates below.

**C. Plaintiffs' Delayed Applications**

24. All Plaintiffs are law abiding citizens and desire a firearm license for self-protection.

25. For over a year and nearly two years in some instances, and continuing to date, Plaintiffs remain unable to lawfully possess or acquire firearms solely due to NYPD inaction on their firearm license applications.

- **Plaintiff DiSalvo**

26. On March 4, 2025, Plaintiff John DiSalvo used the NYPD online portal to apply for his gun permit license from his home computer in Queens County and the same day the NYPD emailed DiSalvo confirming his application and fee were received, issued an application number and he completed his fingerprint and interview process completed on March 26, 2025.

27. After 6 months of inaction by the NYPD whether his license was granted or denied, DiSalvo made numerous calls and sent emails to the NYPD licensing department that were all ignored.

On October 24, November 12, 24 and 25 and December 10, 2025 DiSalvo emailed the NYPD licensing department requesting an answer, but those emails were ignored. **Exhibit A.**[2]

28. Frustrated with the delay and lack of response, DiSalvo contacted his District Councilmember, Vickie Paladino, whose office contacted the NYPD on December 12, 2025; however, even that elected official's communications was ignored by NYPD. **Exhibit B**

- **Plaintiff Gottlieb**

29. On March 25, 2025, Plaintiff Alexandra Gottlieb used the NYPD online portal to apply for her gun permit license from her home computer in Brooklyn. That day the NYPD emailed Gottlieb confirming her application and fee were received, issued an application number and she completed her fingerprint and interview process on May 29, 2025.

30. After waiting for her license for eight months since her application, on December 2, 2025 Gottlieb sent three emails to various NYPD licensing offices. **Exhibit C**. On December 3, 2025, Gottlieb called the License Division Handgun Section at 646-610-5560, and left a message. Her communications were ignored.

- **Plaintiff Torres**

31. On March 15, 2025, Plaintiff Jose Torres used the NYPD online portal to apply for his gun permit license from his home computer in Brooklyn. That day the NYPD emailed Torres confirming his application and fee were received, issued an application number and he completed his fingerprint and interview process on May 29, 2025.

32. Plaintiff Torres resided with Plaintiff Gottlieb and relied on her communications with the NYPD License Division as they submitted their applications at the same time, and he understood that her efforts to obtain information on the delay were ignored.

- **Plaintiff Cairney**

33. Plaintiff Cairney illustrates Defendants' post-approval delays. He is an honorably discharged Marine Corps war veteran submitted his firearm license application and fee on May 7, 2024, and only after the office of New York City Councilmember Vicki Paladino contacted the NYPD on his behalf did Defendants respond and approve his application in September 5, 2025. **Exhibit D-** 7/10/25 Cairney email to NYPD, copying Eric Forte of Councilmember Paladino's office.

---

[2] Exhibits are redacted to remove confidential information.

34. The September 5, 2025 approval letter directed that "once you purchase your firearm, you must email the License Division at: DG_LIC-Purchaseorders@nypd.org within 72 hours to submit your firearm purchase documents." Notwithstanding that approval, and although Plaintiff Cairney timely submitted all required materials - including the firearm's serial number and photographs—to complete the post-license purchase process so he could retrieve the firearm being held by the dealer pending NYPD clearance, Defendants have failed to issue and deliver his license to date, thereby preventing the gun dealer from releasing the firearm to him to date and making it a total of one year and ten months that Defendants have prevented Cairney from exercising his Second Amendment rights.

- **Plaintiff Biancaniello**

35. Plaintiff Biancaniello resides in Whitestone, Queens, and held a carry permit for two handguns from approximately 2004 to 2014 under New York's former for-cause standard based on his business; after that business terminated, he discontinued the carry license but maintained a premises license for his firearms.

36. Violent crime had increased in his Queens neighborhood, causing him to feel the need to carry a firearm for self-protection. For example, in July 2025, three teenagers arrived in a stolen U-Haul van across the street from his home and held guns to his neighbor's head during a carjacking; afterward, the neighbor ran to Biancaniello's home for help contacting police.

37. He also became aware of chronic home invasions in recent years in his neighborhood, including a 2025 Thanksgiving-time incident in nearby Malba where a gang of teenagers assaulted a homeowner and burned a vehicle.

38. Concerned for his and his family's safety, Biancaniello applied for a carry license on October 18, 2024, and received same-day email confirmation of receipt. Although his fingerprints were already on file through his premises permit, NYPD's first communication came five months later, on March 28, 2025, erroneously requesting fingerprints - demonstrating the application had not been properly reviewed and reflecting an inexcusable delay. That same day, March 28, 2025, he scheduled an interview using instructions provided for the first time in that email, but the earliest available date was June 18, 2025 - another three-month delay.

39. By the June 18 interview, the application had been pending eight months; the interviewer advised his documentation was in order and the license should be granted, yet as of February 2026 no license has issued.

40. Biancaniello repeatedly called and emailed NYPD seeking updates, including a December 2025 call to Sergeant Mio at 646-610-6968 and an email to Commander Hugh Bogle of the License Division, along with at least two additional calls to the division number listed on his application; all communications were ignored.

41. It has now been one year and four months since his October 2024 application; the six-month statutory ceiling under Penal Law § 400.00 expired in April 2025.

42. All Plaintiffs have not received any communication granting or denying their license within the statutory six-month period, have not received their license for periods of up to over a year since applying, and all this time have not received any specific written notice showing good cause tied to each Plaintiff applicant affirming why there is this delay beyond the mandatory six month adjudication period under Penal Law § 400.00 (4-b).

43. All Plaintiffs intend their gun licenses for self-protection and intend to proceed with the Defendants' process of purchasing a gun and re-applying with Defendants every three years to maintain their license pursuant to Penal Law § 400.00 (10), as implemented under Title 38 of the Rules of the City of New York requiring licensees to file renewal applications before expiration and undergo updated eligibility review.

44. All Plaintiffs reasonably fear that these post-license procedures will be delayed as well since it is the same department involved in adjudicating these, and that same department has no concern for their Second Amendment rights as demonstrated by Plaintiffs calls and emails being ignored for a year and more, and Plaintiff Cairney is proof that post-license delays are real.

**D. Public Reports of NYPD's Systemic Violations and Administrative Failure**

45. There is more proof that Plaintiffs are not alone in having their Constitutional rights trampled by Defendants. Public reporting indicates that concealed-carry applications were approximately 6,751 in 2023. https://gothamist.com/news/more-new-yorkers-are-applying-for-gun-permits-the-nypd-wont-say-how-many-they-granted. Despite the statutory requirement of a decision within six months, reporting focused on the immediate post-*Bruen* period shows that timely adjudication was the exception rather than the rule. In the six months following *Bruen* (late June through December 2022), the NYPD reportedly received nearly 5,000 handgun license applications but approved only about 503 within six months. https://www.thecity.nyc/2023/07/23/nypd-gun-permit-approvals-bruen-supreme-court-ghost/ .

46. NY1 reported that there were 9,432 applications in 2024. https://www.shootingnewsweekly.com/quote-of-the-day/nypd-doesnt-want-to-disclose-how-many-gun-permits-theyve-issued-for-some-reason/ . The NYPD, however, has declined to release current data identifying how many applications are adjudicated within the statutory period or the size of the pending backlog, further supporting that untimely adjudication is ongoing. https://www.shootingnewsweekly.com/quote-of-the-day/nypd-doesnt-want-to-disclose-how-many-gun-permits-theyve-issued-for-some-reason/.

47. Councilmember Paladino has confirmed in her Queens District that she has received 25-30 complaints from constituents in 2025 regarding the NYPD's failure to act on their firearm applications within the statutory six months. **Exhibit E**.

48. Taken together, these publicly reported figures plausibly support Plaintiffs' allegation that Defendants maintain policies or practices that routinely result in adjudications beyond the six-month deadline imposed by Penal Law § 400.00(4-b).

49. Despite awareness of prolonged delays by public reports and license applicant complaints, Defendants maintain chronic understaffing and fail to allocate even the millions of dollars received in licensing-fee revenue to correct systemic deficiencies.

**D. NYPD's Transparency Failures and Unsubstantiated Excuse of Background Checks**

50. Upon information and belief, in or about July, 2025, the television station NY1 filed a FOIL request to the NYPD requesting the number of gun permits applied for and the number of permits outstanding for that year and other years and the NYPD failed to respond to that request.

51. On January 12, 2026, NYC Councilmember Paladino's office made a FOIL request for the years 2023-2025 of the number of gun permits applied for and the number of permits outstanding past six-months. That was assigned number "FOIL-2026-056-00592" and has not been timely responded to date, pursuant to New York Public Officers Law §89(3)(a).

52. On January 21, 2026, NY1 reported that the NYPD's issued a statement claiming its background check process is the delay, needed to "continue to maintain its high standards when conducting background checks and issuing permits irrespective of volume. This process can be lengthy to ensure the thorough screening and review of applicants." See https://ny1.com/nyc/all-boroughs/politics/2026/01/22/nypd-license-division-concealed-carry-delays

53. Contrary to Defendant's background check excuse for the delays, the state's own Penal Law § 400.00(4), titled "Licensing and other Provisions Relating to Firearms," directs expediency as fingerprint search results "shall be forwarded to the investigating officer and shall be made *without unnecessary delay* (emphasis added)" and "[u]pon completion of the investigation, the police authority shall report the results to the licensing officer *without unnecessary delay* (emphasis added)." *Id.*

54. Additionally, as shown above, the commentary note to Penal Law § 400.00(4) affirms that the six-month limit is "for the *expeditious processing of licensing requests*:

55. That commentary further states any delay past the six-months becomes Defendants' burden of proof to demonstrate that it is justified. However, Defendants refuse to even respond to applicants after six-months has passed, as each Plaintiff herein has demonstrated, because Defendants cannot justify their delay and do not want to correct it to afford Plaintiffs and other applicants their Second Amendment rights.

56. It is inconceivable for a state actor to excuse their delays based upon background check processing when that information is quickly accessible by the state actor's own computer systems, files and federal information on the fingerprint records alone is quickly supplied, sometimes within hours and at most within a few days.

57. Nothing in the background process can possibly justify months and years delay past the statutory six-month deadline, which is unusually longer than any other state's licensing period.

58. Additionally, Defendants cannot meet its burden under the text-and-history test of *Bruen,* 597 U.S. at 32, 142 S. Ct. 2111 that first asks whether the "plain text" of the Second Amendment presumptively protects an individual's right to acquire and possess a firearm, which Plaintiffs contend exists here, and, if so then the burden shifts to Defendants to produce a historical analogue in the Nation justifying their conduct, which here would be proof that delays in issuing licenses beyond six months and into over a year is historically supported – which does not exist and Defendants own income alone proves there is no reason for this delay.

### E. Fee Revenue and Available Resources

59. For Fiscal Year 2026, the NYPD's operating budget is approximately $6.14 billion, exclusive of pensions, fringe benefits, and debt service, as reflected in the New York City Council's Report on the Fiscal Year 2026 Executive Plan (published March/May 2025). **Exhibit F.**

60. That budget includes substantial federal funding to the NYPD for law enforcement operations. Defendants' receipt and use of federal funds underscore their obligation to administer the City's firearm licensing regime in a manner consistent with the United States Constitution, including the Second Amendment, and does not insulate unconstitutional practices from federal judicial review.

61. There are also funds generated from the license application fees as the NYPD charges a $340 fee per firearm license application and for renewal applications. Considering some 5,000 firearm license applications were filed in 2022 and 9,432 in 2025, as above reported, multiplied by the $340 application fee then Defendants collected over $1,700,000 in 2022 and $3,206,880 in 2025. Of course, the $340 renewal fees also collected is additional revenue.

62. These revenues of Millions of Dollars in addition to the NYPD's billion-dollar budget and federal funding show sufficient funds to employ additional staff, technological improvements, and modernization of the gun licensing portal, yet Defendants have failed to allocate resources in a manner that would prevent ongoing constitutional harm.

63. The City's extraordinary budget, federal funding, and its continued collection of substantial licensing fees, notwithstanding its failure to timely process applications, support that the delays are not attributable to unavoidable administrative constraints or even an excuse of searching applicant background records – it is attributable to policy decisions within the City's control.

**V. STANDING AND IRREPARABLE HARM WARRANT INJUNCTIVE RELIEF**

64. Plaintiffs have standing because they have not been issued licenses to exercise their Second Amendment rights and remain subject to a licensing regime that conditions lawful exercise of those rights on NYPD action or inaction, creating a concrete and particularized risk of ongoing and future constitutional injury.

65. Penal Law § 400.00 criminalizes possession of a firearm absent licensure, making NYPD action a prerequisite to Plaintiffs' lawful exercise of their Second Amendment rights.

66. Even where an initial license is eventually issued beyond six months, Plaintiffs remain subject to recurring approval requirements under RCNY § 5-25 and RCNY § 5-02, including purchase authorizations, inspections, registrations, and renewals that are not governed by any statutory or regulatory deadlines.

67. Additionally, because Penal Law § 400.00(10) limits licenses to a maximum of three years, each Plaintiff must seek renewal to continue lawful possession, and the 90-day firearm purchase

interval further subjects them to repeated NYPD approval, re-entering the same system that produced the challenged delays.

68. This recurring exposure establishes standing for prospective relief, as Plaintiffs challenge an ongoing licensing regime that predictably subjects them to repeated constitutional deprivation.

- **Plaintiffs Face Ongoing and Irreparable Harm**

69. The deprivation of a constitutional right, even for a limited period, may constitute irreparable harm where the loss cannot be remedied by monetary damages.

70. Plaintiffs' inability to lawfully acquire, possess, or register firearms during NYPD delays directly burdens their right to keep and bear arms.

71. This harm is irreparable because damages cannot restore the lost opportunity to exercise that right during the period of deprivation.

72. Where delay causes a license to expire before renewal is processed, Plaintiffs must either surrender lawfully owned firearms or risk criminal exposure - a coercive constitutional injury.

73. Absent injunctive relief, Plaintiffs will remain subject to a licensing regime that conditions Second Amendment exercise on discretionary administrative action unconstrained by definite temporal limits.

## VI. CAUSES OF ACTION

### COUNT I: SECOND AMENDMENT VIOLATION (42 U.S.C. § 1983)

74. Plaintiffs incorporate all of the foregoing paragraphs as if recited here in full.

75. The Second Amendment protects the right of law-abiding citizens to keep and bear arms.

76. While states and municipalities may impose licensing requirements, such regimes may not be administered in a manner that effectively denies or indefinitely delays the exercise of that right.

77. Defendants' systemic failure to timely process firearm license applications, combined with chronic understaffing, non-responsiveness, and a dysfunctional application portal, operates to deny Plaintiffs the ability to exercise their Second Amendment rights.

78. The prolonged delays described herein constitute an ongoing constitutional violation of the Second Amendment as incorporated by the Fourteenth Amendment.

**COUNT II: PROCEDURAL DUE PROCESS (42 U.S.C. § 1983)**

79. Plaintiffs incorporate all of the foregoing paragraphs as if recited here in full.

80. Plaintiffs possess a protected liberty interest in the exercise of Second Amendment rights.

81. Defendants condition that liberty on licensure and retain exclusive control over whether and when Plaintiffs may exercise the right.

82. Defendants have failed to provide Plaintiffs with timely determinations even as mandated within their own regime pursuant to a statutory deadline.

83. Prolonged and open-ended delay, where the government alone controls access to a constitutional right and provides no adequate procedural safeguards in its own process, violates the Due Process Clause of the Fourteenth Amendment.

**COUNT III: MUNICIPAL LIABILITY (Monell)**

84. Plaintiffs incorporate all of the foregoing paragraphs as if recited here in full.

85. The constitutional violations alleged herein were caused by official policies, practices, and customs of the City of New York, including deliberate decisions regarding staffing, budgeting, and administration of the firearm licensing regime.

86. City policymakers were aware that prolonged delays were occurring and that such delays prevented law-abiding citizens from exercising constitutional rights, yet failed to take corrective action.

87. The City's actions and omissions reflect deliberate indifference to Plaintiffs' constitutional rights.

**DECLARATORY AND INJUNCTIVE RELIEF**

88. Plaintiffs seek a declaration that Defendants' administration of the firearm-licensing regime violates the Second and Fourteenth Amendments by imposing prolonged and unreasonable adjudication delays that deprive law-abiding citizens of the ability to exercise their right to keep and bear arms, with New York's six-month statutory adjudication framework serving only as an objective benchmark demonstrating that the challenged delays are lengthy and violate the Second Amendment.

89. Plaintiffs seek immediate injunctive relief directing Defendants to adjudicate, forthwith and without further delay, all license applications that have not been adjudicated within six months of their filing with the NYPD.

90. Plaintiffs seek prospective injunctive relief requiring Defendants to implement constitutionally adequate procedures to ensure timely adjudication of license applications and related post-approvals after the license is granted by imposing time limits for any related approvals, including the gun purchase process.

**PRAYER FOR RELIEF**

Plaintiffs respectfully request that the Court:

A. Declare that Defendants' licensing practices violate the Second Amendment;

B. A preliminary and permanent injunction prohibiting Defendants from implementing its licensing regime governing the issuance of firearm licenses in a manner that violates the Second Amendment, as incorporated by the Fourteenth Amendment, by at minimum directing Defendants to complete the process within six months as state law directs;

C. Enter appropriate prospective injunctive relief to halt ongoing constitutional violations;

D. Award Plaintiffs nominal and other damages for the constitutional violations;

E. Award fees and costs and attorneys' fees pursuant to 42 U.S.C. § 1988; and

F. Grant such other and further relief as the Court deems just and proper.

Dated: February 16, 2026

Respectfully submitted,

Law Offices of Susan Chana Lask

/s/Susan Chana Lask
Susan Chana Lask, Esq.
244 Fifth Avenue, #2369
New York, NY 10001
(917) 300-1958

*Counsel for Plaintiffs*