Index No. 26-cv-00274 (NCM)(PK)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JOHN DISALVO, JOSE TORRES, ALEXANDRA GOTTLIEB, PETER CAIRNEY and CHRISTOPHER BIANCANIELLO,

Plaintiffs,

-against-

THE CITY OF NEW YORK, Jessica S. Tisch, Police Commissioner, in her official capacity, and JOHN AND JANE DOES 1-3 who are THE COMMANDING OFFICERS TO THE NYPD LICENSE DIVISION and other supervisors related to gun permits, in his or her official capacity,

Defendants.

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTIVE RELIEF

***STEVEN BANKS***
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, NY  10007*

*Of Counsel:*  Nicholas R. Ciappetta
*Tel:  (212) 356-4036*

MICHELLE GOLDBERG-CAHN,
NICHOLAS R. CIAPPETTA,
KEVIN RIZZO,
Of counsel.

February 27, 2026

i

TABLE OF AUTHORITIES ..................................................................................................iv

PRELIMINARY STATEMENT ...........................................................................................7

PRELIMINARY INJUNCTION STANDARD.......................................................................8

ARGUMENT ......................................................................................................................10

    POINT I                                                                         10

        PLAINTIFFS' REQUESTED PRELIMINARY INJUNCTIVE RELIEF IS
        IMPROPER...................................................................................................... 10

        A. Plaintiffs' request for a preliminary injunction directing Defendants to
            decide their outstanding firearm license applications is moot. ................... 10

            1. The voluntary cessation exception to mootness does not save
               Plaintiffs' claims. .............................................................................11

            2. The "capable of repetition, yet evading review" exception to
               mootness likewise does not save Plaintiffs' claims. .............................14

        B. Plaintiffs are not entitled to a declaratory judgment as part of a motion
            for a preliminary injunction. ..................................................................... 16

        C. Plaintiffs' request to enjoin any policies or practices that delay
            adjudication of firearm licenses beyond six months is impermissibly
            vague. ....................................................................................................... 17

    POINT II                                                                         18

        PLAINTIFFS CANNOT DEMONSTRATE THEIR ENTITLEMENT TO
        PRELIMINARY INJUNCTIVE RELIEF ....................................................... 18

        A. Plaintiffs cannot make a strong showing of irreparable harm in the
            absence of the court granting the preliminary injunction. ......................... 18

        B. Plaintiffs cannot demonstrate a substantial likelihood of success on the
            merits..................................................................................................... 20

            1. Second Circuit case law does not support Plaintiffs' argument. .......... 20

            2. New York City's licensing system has not been put toward abusive
               ends. ................................................................................................. 22

            3. Plaintiffs have not demonstrated non-compliance with Penal Law
               § 400.00(4-b)................................................................................... 23

            4. Plaintiffs cannot establish municipal liability...................................25

5. Plaintiffs lack standing to seek prospective injunctive relief...............................28

C. Plaintiffs have not shown that the balance of equities and public interest favor injunctive relief.................................................................................................30

CONCLUSION...................................................................................................................31

## TABLE OF AUTHORITIES

**Cases**

Allison Lending, LLC v. Landa APP 3 LLC, No. 25-1939, 2026 U.S. Dist. LEXIS 28767 (E.D.N.Y. Feb. 10, 2026) .................................................................................................. 18

Amnesty Am. V. Town of W. Hartford, 361 F.3d 113 (2d Cir. 2004) ............................. 26, 27, 28

Bd. Of the Cnty. Comm'rs v. Brown, 520 U.S. 397 (1997) ............................................................ 26

Bibeau v. Vill. Clerk of Tuxedo Park, 145 A.D.2d 478 (2d Dep't 1988) ..................................... 24

Campbell-Ewald Co. v. Gomez, 577 U.S. 153 (2016) ................................................................. 10

Chen v. Noem, No. 24-2058, 2025 U.S. App. LEXIS 12456 (2d Cir. May 22, 2025)..... 10, 14, 15

City of Canton v. Harris, 489 U.S. 378 (1989) ...................................................................... 27, 28

City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114 (2d Cir. 2011) ...................... 17, 18

Connick v. Thompson, 563 U.S. 51 (2011) ................................................................................... 25

Crocs, Inc. v. Jinjiang Hobibear Shoes & Clothing Co., Ltd., No. 25-180, 2025 U.S. Dist. LEXIS 101439 (S.D.N.Y. May 28, 2025)................................................................................... 17

Daileader v. Certain Underwriters at Lloyds London Syndicate, 1861, 96 F.4th 351 (2d Cir. 2024) ......................................................................................................................................... 18

Davis v. Aviles- Ramos, No. 25-7555, 2026 U.S. Dist. LEXIS 2812 (S.D.N.Y. Jan. 7 2026) .... 11

Exxon Mobil Corp. v. Healey, 28 F.4th 383 (2d Cir. 2022) ......................................................... 15

Faiveley Transp. Malmo AB v. Wabtec Corp., 559 F.3d 110 (2d Cir. 2009) .............................. 18

Forschner Grp., Inc. v. Arrow Trading Co., 124 F.3d 402 (2d Cir. 1997) .................................. 17

Freedom Holdings, Inc. v. Spitzer, 408 F.3d 112 (2d Cir. 2005) ................................................. 19

Frey v. City of New York, 157 F.4th 118 (2d Cir. 2025) .............................................................. 21

Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167 (2000) ................ 28

Garcia v. Yonkers Sch. Dist., 561 F.3d 97 (2d Cir. 2009) ............................................................ 17

Giambalvo v. Suffolk Cnty., 155 F.4th 163 (2d Cir. 2025) .......................................................... 21

Hafner v. N.Y. State Bd. of Elections, No. 23-09517, 2026 U.S. Dist. LEXIS (E.D.NY. Jan. 30, 2026) ...................................................................................................... 16

Hager v. People Inc., No. 23-560, 2025 U.S. Dist. LEXIS 204412 (W.D.N.Y. Oct. 16, 2025)... 15

Iacovangelo v. Corr. Med. Care, Inc., 624 F. App'x 10 (2d Cir. 2015) ...................................... 26

Irish Lesbian & Gay Org. v. Giuliani, 143 F.3d 638 (2d Cir. 1998) ........................................... 15

JLM Couture, Inc. v. Gutman, 24 F.4th 785 (2022) ..................................................................... 10

L.A. v. Lyons, 461 U.S. 95 (1983) .......................................................................................... 28, 29

Lamar Advert. of Penn, LLC v. Town of Orchard Park, 356 F.3d 365 (2d Cir. 2004) ......... 11, 14

Lewis v. Thompson, 252 F.d3d 567 (2d Cir. 2001)........................................................ 14

Long v. State of New York, 7 N.Y.3d 269 (2006)......................................................... 25

Malik v. Meissner, 82 F.3d 560 (2d Cir. 1996) ........................................................... 10

Mastrovincenzo v. City of New York, 435 F.3d 78 (2d Cir. 2006)................................. 9

McDowell v. Brown, 392 F3d 1283 (11th Cir 2004) ................................................... 28

Meadors v. Erie Cnty. Bd. of Elections, No. 23-1054, 2024 U.S. App. LEXIS 18484 (2d Cir. 2024 July 26, 2024).................................................................................... 15

Mendoza-Lebron v. Adams, No. 24-05154, 2025 U.S. Dist. LEXIS 132371 (E.D.N.Y. July 11, 2025) ............................................................................................................. 15

Mills v. N.Y.C., 758 F. Supp. 3d 250 (S.D.N.Y. 2024)................................................. 21

Monell v. New York City Dept. of Social Servs., 436 U.S. 658 (1978).............. 25, 26, 27, 28

Moore v. Consol. Edison Co., 409 F.3d 506 (2d Cir. 2005)........................................ 8, 11

Munaf v. Geren, 553 U.S. 674 (2008) .......................................................................... 8

N.Y. State Firearms Ass'n v. James, 157 F.4th 232 (2d Cir. 2025) ........................... 21

National Ass'n for Gun Rights v. Lamont, 153 F.4th 213 (2d Cir. 2025).................... 19

New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 597 U.S. 1 (2022)................................................................................ 7, 21, 22, 30

New York v. Actavis PLC, 787 F.3d 638 (2d Cir. 2015) ............................................... 9

Nicosia v. Amazon, Inc., 834 F.3d 220 (2d Cir. 2016)............................................... 28

North Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc., 883 F.3d 32 (2d Cir. 2018)............. 9

O'Kane v. Plainedge Union Free Sch. Dist., 827 F. App'x 141 (2d Cir. 2020)........................... 26

Oneida Nation of N.Y. v. Cuomo, 645 F.3d 154 (2d Cir. 2011) ................................... 9

Pembaur v. City of Cincinnati, 475 U.S. 469 (1986)............................................... 25, 26

Plaza Health Labs., Inc. v. Perales, 878 F.2d 577 (2d Cir. 1989)................................ 9

Polymer Tech. Corp. v. Mimran, 37 F.3d 74 (2d Cir. 1994) ....................................... 9

Raia v. Pompeo, 435 F. Supp. 3d 7 (E.D.N.Y. 2020)................................................. 10

Rodriguez v. DeBuono, 175 F.3d 227(2d Cir. 1999)................................................... 19

Rossito-Canty v. Cuomo, 86 F. Supp. 3d 175 (E.D.N.Y. 2015).................................. 10

Scheiner v. Act Inc., No. 10-0096, 2012 U.S. Dist. LEXIS 15204 (E.D.N.Y. Feb. 24, 2013)..... 15

Shaibi v. Cissna, No. 18-102, 2019 U.S. Dist. LEXIS 142012 (W.D.N.Y. Aug. 20, 2019) ........ 13

Shain v. Ellison, 356 F.3d 211 (2d Cir. 2004) ........................................................... 28

Srour v. City of New York, 117 F.4th 72 (2d Cir. 2024)............................................. 14

Union Home Mortg. Corp. v. Cromer, 31 F. 4th 356 (6th Cir. 2022) ......................... 18

v

United States v. Rahimi, 602 U.S. 680 (2024)................................................................ 22

Vann v. City of N.Y., 72 F.3d 1040 (2d Cir. 1995) ....................................................... 27

Vives v. City of New York, 524 F.3d 346 (2d Cir. 2008) .............................................. 26

Wagschal v. Skoufis, 442 F. Supp.3d 612 (S.D.N.Y. 2020), aff'd, 2021 U.S. App. LEXIS 11870 (2d Cir. Apr. 22, 2021)............................................................................... 13

Weitao Chen v. Amazon.Com, Inc., No. 23-5324, 2023 U.S. Dist. LEXIS 201835 (E.D.N.Y. Nov. 9, 2023) ........................................................................................... 10

**Statutes**

42 U.S.C. § 1983................................................................................................................ 25

New York Penal Law § 400.00(1)(b) .......................................................... 20, 23, 24, 30

Penal Law § 400.00............................................................................................................ 26

Penal Law § 400.00(4)....................................................................................................... 24

Penal Law § 400.00(4-a).................................................................................................... 20

Penal Law § 400.00(4-b)................................................................................ 23, 24, 25, 30

Penal Law § 400.00(6)....................................................................................................... 21

Penal Law. § 400.00(10).................................................................................................... 29

**Rules**

38 RCNY § 5-10 ................................................................................................................ 19

Federal Rule of Civil Procedure 65(d)............................................................................. 17

**Constitutional Provisions**

U.S. Const., Art. III, § 2................................................................................................... 10

**PRELIMINARY STATEMENT**

Since the United States Supreme Court's decision in <u>New York State Rifle & Pistol Ass'n, Inc. v. Bruen</u>, 597 U.S. 1 (2022), the Second Amendment landscape has changed dramatically.  As the core of the Second Amendment right has expanded, so to have the number of individuals seeking to possess and carry a firearm.  To meet the changing legal landscape, the State and City have revised and added to their regulatory framework.  In the City of New York, the New York City Police Department's License Division ("License Division") is on the frontlines of responding to developments in Second Amendment jurisprudence.  Specifically, the License Division is tasked with the enormous responsibility of reviewing tens of thousands of firearm license applications and determining whether the applicant lacks the "good moral character" necessary to be entrusted with a weapon.

Against this backdrop, Plaintiffs maintain that the NYPD is purposefully delaying the adjudication of applications so as to "prevent law-abiding citizens from exercising rights protected by the Second Amendment."  First Amended Complaint ("FAC"), Docket Entry No. 7 at 1.  Further, Plaintiffs allege that these "delays are systemic and foreseeable…."  <u>Id.</u> at 2.  Nothing could be further from the truth.  Plaintiffs appear to draw broad conclusions from just their own applications.  But those applications are but a drop in the proverbial ocean of applications received by the License Division annually.  Contrary to Plaintiffs' contention, the License Division has, in fact, adjusted policies and procedures to expedite the application review process, and new licensees are continually joining the ranks of those approved by the License Division to possess and carry firearms.

In addition to the First Amended Complaint, Plaintiffs recently filed a motion brought by Order to Show Cause for a temporary restraining order and preliminary injunction.

Docket Entry No. 8.  The interim relief sought therein is bizarre, inappropriate, and not legally supported.  First, Plaintiffs seek to compel decisions on their outstanding license applications even though the purpose of preliminary injunctive relief is to preserve the status quo rather than induce a positive fact.  In any event, the License Division has already acted upon those applications.  Next, Plaintiffs ask for an injunction against unnamed and undescribed License Division policies and practices that delay decisions on applications beyond six months.  This relief is incredibly vague and inconsistent with the type of injunctions that can be granted by the federal courts under Federal Rule of Civil Procedure 65.  Lastly, Plaintiffs ask for a declaratory judgment that, in sum and substance, declares that six months constitutes the outer limit of time for a licensing officer in New York State to review an application for a firearm.  It is, however, improper for a court to grant what is, in essence, the ultimate relief on a motion for a preliminary injunction.  Indeed, this appears to be nothing other than a motion for summary judgment disguised as an application for immediate injunctive relief under Rule 65.  And, even if Plaintiffs could establish that they seek appropriate interim injunctive relief, they cannot meet the exacting standard for the grant of a preliminary injunction, falling well short on all three prongs.

For these reasons, and the others that follow in this memorandum of law, the Defendants request that the court deny Plaintiffs' motion for a preliminary injunction.

**PRELIMINARY INJUNCTION STANDARD**

There are different formulations of the standard for a preliminary injunction depending on the nature of the relief sought and against whom the relief is sought.  Under any formulation, the issuance of a preliminary injunction is considered a drastic and extraordinary remedy, see Moore v. Consol. Edison Co., 409 F.3d 506, 510 (2d Cir. 2005), and "never awarded as of right."  Munaf v. Geren, 553 U.S. 674, 689-90 (2008).

To obtain preliminary injunctive relief in a federal case, a plaintiff must generally establish (a) irreparable harm; and (b) "either (1) a likelihood of success on the merits of its case or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly" in its favor.  See e.g.,  Polymer Tech. Corp. v. Mimran, 37 F.3d 74, 77-78 (2d Cir. 1994).  Additionally, the moving party is required to show that the preliminary injunction is in the public interest.  See Oneida Nation of N.Y. v. Cuomo, 645 F.3d 154, 164 (2d Cir. 2011).  But where, as here, "the moving party seeks to stay governmental action taken in the public interest pursuant to a statutory or regulatory scheme," a preliminary injunction should be granted only if the moving party meets the more rigorous likelihood-of-success standard.  Plaza Health Labs., Inc. v. Perales, 878 F.2d 577, 580 (2d Cir. 1989).  Further, if the preliminary injunction is mandatory, rather than prohibitory, in nature, a heightened standard is applied and the movant must make a "clear" or "substantial" showing of likelihood of success on the merits and a "strong" showing of irreparable harm, in addition to the public interest element.  See New York v. Actavis PLC, 787 F.3d 638, 650 (2d Cir. 2015).

Here, Plaintiffs are clearly seeking a mandatory preliminary injunction as the requested relief does not merely seek to preserve the status quo.  See North Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc., 883 F.3d 32, 36 (2d Cir. 2018) (stating that an injunction that seeks to alter the status quo is considered mandatory in nature); see also Mastrovincenzo v. City of New York, 435 F.3d 78, 89 (2d Cir. 2006).  Instead, they are essentially seeking a writ of mandamus to compel the License Division to take certain action – that is, the issuance of decisions on each of their pending applications for a concealed carry license.  See Memorandum of Law Supporting Plaintiffs' Motion for Preliminary Injunctive Relief ("Plaintiffs' Memo") at 1.  Case law clearly establishes that this type of relief is mandatory rather than prohibitory in

nature.  See JLM Couture, Inc. v. Gutman, 24 F.4th 785, 799 n.16 (2d Cir. 2022); Rossito-Canty v. Cuomo, 86 F. Supp. 3d 175, 200 (E.D.N.Y. 2015); Raia v. Pompeo, 435 F. Supp. 3d 7, 15 (E.D.N.Y. 2020); Weitao Chen v. Amazon.Com, Inc., No. 23-5324, 2023 U.S. Dist. LEXIS 201835, at *5-6 (E.D.N.Y. Nov. 9, 2023).  Thus, Plaintiffs must meet the most demanding test to obtain a preliminary injunction.  Accordingly, the relevant standard for this case is as follows: Plaintiffs must demonstrate a "clear" or "substantial" likelihood of success on the merits and a "strong" showing of irreparable harm, in addition to showing that the preliminary injunction is in the public interest.[1]

## ARGUMENT

### POINT I

### PLAINTIFFS' REQUESTED PRELIMINARY INJUNCTIVE RELIEF IS IMPROPER

A.    **Plaintiffs' request for a preliminary injunction directing Defendants to decide their outstanding firearm license applications is moot.**

Article III of the United States Constitution provides that the jurisdiction of the federal courts is limited to "cases" and "controversies."  See Campbell-Ewald Co. v. Gomez, 577 U.S. 153, 160 (2016); U.S. Const., Art. III, § 2.  The burden rests with a plaintiff to prove the existence of subject matter jurisdiction.  See Malik v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996).

"Plaintiffs seek a preliminary injunction directing Defendants to adjudicate their firearm license applications within seven (7) days of entry of this Court's order on this motion where such applications have been pending more than six (6) months from filing."  Plaintiffs' Memo at 1.  The License Division, however, has issued decisions on all of the Plaintiffs' outstanding applications.  Indeed, the applications of Torres, Cairney, and Biancaniello were

---

[1] Plaintiffs cannot satisfy even a more relaxed preliminary injunction standard.

approved, and the applications of Gottlieb and DiSalvo were denied.  See Declaration of Nicole Berkovich ("Berkovich Decl.") at ¶¶ 21-25.  Plaintiffs' request for injunctive relief did not seek a specific determination on the applications, simply that the applications be adjudicated.[2]  Clearly, that has occurred.[3]  As Plaintiffs have obtained the exact relief that they could have obtained by the granting of the temporary restraining order/preliminary injunction they seek here, this branch of their motion is moot.  See Moore, 409 F.3d at 510; see also Davis v. Aviles- Ramos, No. 25-7555, 2026 U.S. Dist. LEXIS 2812, at *6-7 (S.D.N.Y. Jan. 7, 2026).

### 1. The voluntary cessation exception to mootness does not save Plaintiffs' claims.[4]

Defendants' actions in deciding the outstanding applications satisfy the requirements of the voluntary cessation doctrine.  Mootness may be premised on a defendant's voluntary cessation of the allegedly unlawful conduct if the defendant can show that "(1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation."  Lamar Advert. of Penn, LLC v. Town of Orchard Park, 356 F.3d 365, 375 (2d Cir. 2004).  These elements are undeniably met.

The alleged unconstitutional conduct was the License Division's "delay" in adjudicating Plaintiffs' applications.  There is absolutely no reason to expect that any of the Plaintiffs would experience "delay" on these same applications again.  Three of the Plaintiffs'

---

[2] Nor is there any legal basis for Plaintiffs to request specific action on their applications.

[3] If Gottlieb and DiSalvo are displeased with the outcome, a remedy in the nature of an appeal is available to them.  See id. at ¶ 26.

[4] Defendants added briefing on the "voluntary cessation" and "capable of repetition, yet evading review" exceptions based on the Court's direction to "fully brief whether plaintiffs' motion seeking declaratory and injunctive relief is moot."  Order dated February 25, 2206.

applications were approved (Torres, Cairney,[5] and Biancaniello); as such, the License Division's role in reviewing their applications is complete. Torres, Cairney, and Biancaniello do not allege that they have any other outstanding applications or that they intend to apply for another license in the future. Nor can Torres, Cairney, and Biancaniello rely on post-approval conduct by the License Division to argue that the alleged delay may recur. First, Torres and Biancaniello have not yet requested permission from the License Division to list a firearm on their concealed carry license. See Berkovoich Decl. at ¶¶ 22-23. Second, licensees can now utilize the public portal to submit a request to add a firearm to a new or existing license. See id. at ¶ 20.[6] Plaintiffs have not shown that submitting requests via the public portal does not simplify and expedite the post-approval process.

With respect to Gottlieb and DiSalvo, the analysis is the same; it is immaterial that the License Division denied rather than approved their applications. As discussed below, Plaintiffs did not seek to compel a particular outcome on their applications; they merely sought a determination on them. In other words, the injury alleged in the FAC is *delay*. The License Division did exactly what was asked of them – decide the applications forthwith. Gottlieb and DiSalvo cannot pivot and argue that the *denial* is the injury for which preliminary injunctive relief should be granted. In other cases where plaintiffs sought to compel the government to adjudicate applications, courts have found their claims moot once the government issued a decision – regardless of what the determination is. See Chen v. Noem, No. 24-2058, 2025 U.S.

---

[5] In fact, Cairney was approved prior to the filing of this action (see Berkovich Decl. at ¶ 21); his issues related solely to the issuance of the license itself, see FAC ¶ 33 ("Plaintiff Cairney illustrates Defendants' post-approval delays."). It is undisputed that Cairney's concealed carry license has now been issued. See Berkovich Decl. at ¶ 21.

[6] When Cairney was seeking approval to list a firearm on his license, the License Division was in the midst of modifying the public portal to add this functionality. See Berkovich Decl. at ¶ 21 n.4.

App. LEXIS 12456, at *4 (2d Cir. May 22, 2025) (reasoning that "there is no reason to believe that Chen will once again face delayed adjudication … for the simple reason that his application is no longer pending"); Shaibi v. Cissna, No. 18-102, 2019 U.S. Dist. LEXIS 142012, at *8 (W.D.N.Y. Aug. 20, 2019) (stating that speculation that "the government might again delay processing the applications … is not a reasonable expectation that the alleged violation will recur.").

Based on the letter dated February 25, 2026, from counsel for Plaintiff, it appears that Gottlieb and DiSalvo are now contending that the denials keep them "in the unconstitutional cycle of prolonged delays of their constitutional rights complained of in this action." Docket Entry No. 14. This is a disingenuous and misleading argument. The Notice of Disapprovals issued to Gottlieb and DiSalvo concluded the License Division's review of their applications. If one or both of them decide to administratively appeal, which they have not done as of the date of the memorandum (see Berkovich Decl. at ¶ 27), a distinct review process is triggered, and a separate determination will be issued by a different actor. See 38 RCNY 5-07(f). There are no facts or allegations in the FAC as to License Division's appeal process and it is pure speculation that any such appeals will be subject to excessive delay. See Wagschal v. Skoufis, 442 F. Supp. 3d 612, 622 (S.D.N.Y. 2020), aff'd, 2021 U.S. App. LEXIS 11870 (2d Cir. Apr. 22, 2021) ("As courts in this Circuit have held, it is inappropriate for Court's to revive a moot case by speculating about a defendant's future actions.").[7]

---

[7] It is likewise speculative (and wrong) to suggest that Cairney, Torres, and Biancaniello will experience unconstitutional delays when they must renew their licenses in several years. For one thing, that event is years in the future, and subject to any number of intervening events (including Plaintiffs themselves deciding not to apply for renewal). Secondly, as discussed later, the renewal process is "a whole different animal" from the License Division's initial application review. See Berkovich Decl. at ¶ 29.

13

It also appears from counsel's letter that Plaintiffs are trying to revive their request for preliminary injunctive relief by asserting that unnamed third parties are experiencing delays similar to the five named plaintiffs.  See Docket Entry No. 14.  Plaintiffs, however, lack third-party standing to seek injunctive relief on behalf of unidentified applicants.  To establish third-party standing, Plaintiffs would need to satisfy the two "prudential limitations" developed by the United States Supreme Court.  See Lewis v. Thompson, 252 F.3d 567, 584 (2d Cir. 2001).  Plaintiffs allege neither a "close relation" with these third parties nor that the third parties are unable to protect their own interests.  As such, Plaintiffs lack standing to assert Second Amendment claims on behalf of the "200 other persons" referenced in counsel's letter.  Docket Entry No. 14.[8]

The easier question for the court is whether the License Division's approvals have eradicated the effects of the challenged conduct, to wit, the alleged excessive delay in adjudicating the Plaintiffs' firearm license applications.  That answer is "Yes."  Plaintiffs sought decisions on their outstanding applications and received them.  Thus, their "situation is 'sufficiently altered so as to present a substantially different controversy from the one that existed when this suit was filed'"  Srour v. City of New York, 117 F.4th 72, 82 (2d Cir. 2024) (quoting Lamar Advert. of Penn, LLC, 356 F.3d at 378).  Further, Plaintiffs cannot identify any ongoing adverse effects from the length of time taken to issue decisions.  See Chen, 2025 U.S. App. LEXIS 12456, at *5.  Accordingly, the interim relief sought by Plaintiffs in this litigation will not provide any tangible benefit to them.

**2. The "capable of repetition, yet evading review" exception to mootness likewise does not save Plaintiffs' claims.**

---

[8] As the exact nature of Plaintiffs' argument as to why preliminary injunctive relief is not moot is unclear, Defendants reserve their right to file supplemental briefing in response to Plaintiffs' March 2, 2026, reply.

To establish this second possible mootness exception, a party must show that "(1) the challenged action was in duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party[9] would be subjected to the same action again."  Irish Lesbian & Gay Org. v. Giuliani, 143 F.3d 638, 647-48 (2d Cir. 1998) (omitting citations and quotation marks).  This aspect of the mootness doctrine is available only in exceptional circumstances.  See Exxon Mobil Corp. v. Healey, 28 F.4th 383, 395 (2d Cir. 2022).  And, Plaintiffs bear the burden of demonstrating this exception applies.  See Meadors v. Erie Cnty. Bd. of Elections, No. 23-1054, 2024 U.S. App. LEXIS 18484, at *4 (2d Cir. July 26, 2024).  As discussed in the context of the "voluntary cessation" doctrine, it is purely speculative that Plaintiffs will once again be subjected to delayed adjudication of an application for a pistol license.  Thus, for this very same reason, the "capable of repetition, yet evading review" exception is also inapplicable.  See Chen, 2025 U.S. App. LEXIS 12456, at *7; Mendoza-Lebron v. Adams, No. 24-05154, 2025 U.S. Dist. LEXIS 132371, at *14 (E.D.N.Y. July 11, 2025) ("The Court finds that both exceptions are inapplicable here because there is no reasonable expectation that the conduct at issue in the present suit will recur.") (omitting citations and quotation marks); Hager v. People Inc., No. 23-560, 2025 U.S. Dist. LEXIS 204412, at *12 (W.D.N.Y. Oct. 16, 2025).

---

[9] This component of the second requirement prevents Plaintiffs from relying on the circumstances of third parties to avoid the mootness doctrine.  See Scheiner v. Act Inc., No. 10-0096, 2012 U.S. Dist. LEXIS 15204, at *11 (E.D.N.Y. Feb. 24, 2013) ("There is a *third* requirement, which is really a gloss on the second:  the party seeking to show that the action is not moot must show that these *same* parties are reasonably likely to find themselves again in dispute over the issues raised in this [case].") (omitting internal citations, quotation marks, and punctuation).

Plaintiffs fare no better with respect to the "evading review" prong of the test.[10] Plaintiffs have not shown that the actions challenged as violating the Second Amendment (delay in adjudicating the applications) were too short in duration to be litigated to conclusion prior to cessation or expiration. Plaintiffs allege (incorrectly) in their declarations in support of this motion that they were waiting approximately one year or more for decisions. See Docket Entry No. 8-2 at ¶ 4; Docket Entry No. 8-3 at ¶ 5; Docket Entry No. 8-4 at ¶ 6; and Docket Entry No. 8-6 at ¶ 9. Since the "delay" allegedly lasted months before ceasing with the issuance of decisions on their applications, Plaintiffs cannot demonstrate that this period of time was too short in duration to litigate the challenged conduct. This "duration" element has typically been satisfied only where the challenged conduct was in duration for a period of weeks or less. See e.g., Hafner v. N.Y. State Bd. of Elections, No. 23-09517, 2026 U.S. Dist. LEXIS 19321, at *7-8 (E.D.NY. Jan. 30, 2026); Gallagher v Sullivan, No. 25-1327, 2018 U.S. Dist. LEXIS 69027, at *6 (N.D.N.Y. Apr. 23, 2018). Therefore, Plaintiffs fall short on both requirements to establish this exception to the mootness doctrine.

**B.  Plaintiffs are not entitled to a declaratory judgment as part of a motion for a preliminary injunction.**

Plaintiffs also ask the Court to grant a declaratory judgment that "prolonged, unjustified delays beyond six (6) months in firearm license adjudication violate the Second and Fourteen Amendments." Proposed Order to Show Cause (Docket Entry no. 8).[11] This request is palpably improper and can be dispatched with little discussion. Specifically, case law from the

---

[10] This element of the "capable of repetition, yet evading review" exception does not necessarily appear applicable to the fact pattern presented by this case. Defendants, however, address this element to the best of their ability in the interest of thoroughness.

[11] Plaintiffs' motion papers barely address their entitlement to their second and third requested items for interim injunctive relief.

Second Circuit unequivocally states that a "preliminary declaratory judgment" is not recognized by the courts.  See Crocs, Inc. v. Jinjiang Hobibear Shoes & Clothing Co., Ltd., No. 25-180, 2025 U.S. Dist. LEXIS 101439, at *3 (S.D.N.Y. May 28, 2025) (citing other cases).  As such, this second part of Plaintiff's motion for preliminary injunctive relief should be denied as well.

### C. Plaintiffs' request to enjoin any policies or practices that delay adjudication of firearm licenses beyond six months is impermissibly vague.

Lastly, Plaintiffs seek an order "enjoining Defendants from maintaining policies or practices that delay adjudication of firearm license applications beyond six (6) months from filing absent individualized written justification consistent with constitutional requirements." Proposed Order to Show Cause (Docket Entry no. 8).  As discussed in Point II of this memo, the License Division does not maintain any such policies or practices.  Nor do Plaintiffs identify any specific such policies or practices.  Plaintiffs' request for a blanket vague injunction is improper and would provide no guidance to the parties.

Plaintiffs' proposed injunctive relief is overly broad.  Federal Rule of Civil Procedure 65(d) provides that an order granting an injunction must "state its terms specifically; and describe in reasonable detail … the act or acts restrained or required."  Federal Rule of Civil Procedure 65(d)(1)(B),(C).  Plaintiffs' description of their requested relief does not enable the Court to comply with this rule.  The purpose of Rule 65 is to notify the enjoined party of the conduct that is being proscribed so that it does not unintentionally or unwittingly violate its terms.  See City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 143-44 (2d Cir. 2011); Garcia v. Yonkers Sch. Dist., 561 F.3d 97, 104 (2d Cir. 2009).  Accordingly, injunctive relief should be "no broader than necessary to cure the effects of the harm caused by the violation."  Forschner Grp., Inc. v. Arrow Trading Co., 124 F.3d 402, 406 (2d Cir. 1997).  In other words, the relief should be narrowly drawn to address the violative conduct.  See City of

New York, 645 F.3d at 144.  "An injunction is overly broad when there is a risk that it restrains legal conduct, or the injunction prohibits illegal conduct that is not the subject of the litigation or is not closely related to the conduct found to justify injunctive relief."  Union Home Mortg. Corp. v. Cromer, 31 F. 4th 356, 364 (6th Cir. 2022).

Plaintiffs' requested relief does not comport with any of these principles.  It is so vaguely written that it will no doubt sweep up legal conduct and does not place the License Division on notice as to what specific conduct it cannot engage in.  Thus, this relief should also be denied at the outset without the need for further analysis.

## POINT II

### PLAINTIFFS CANNOT DEMONSTRATE THEIR ENTITLEMENT TO PRELIMINARY INJUNCTIVE RELIEF

As argued above, Plaintiffs' request for preliminary injunctive relief has three components, each of which is improper for one or more reasons.  Thus, the Court need not proceed any further.  To the extent it does, however, Plaintiffs cannot satisfy the high threshold to obtain a mandatory preliminary injunction.

**A.    Plaintiffs cannot make a strong showing of irreparable harm in the absence of the court granting the preliminary injunction.**

It is appropriate to start with this element first since it is outcome dispositive and so straightforward.  Irreparable harm has been described as the single most important factor for the issuance of a temporary restraining order/preliminary injunction.  See Faiveley Transp. Malmo AB v. Wabtec Corp., 559 F.3d 110, 118 (2d Cir. 2009); see also Daileader v. Certain Underwriters at Lloyds London Syndicate, 1861, 96 F.4th 351, 358 (2d Cir. 2024); Allison Lending, LLC v. Landa APP 3 LLC, No. 25-1939, 2026 U.S. Dist. LEXIS 28767, at *6 (E.D.N.Y. Feb. 10, 2026).  That is because the fundamental purpose of a preliminary injunction

is to preserve the positions of the parties until trial.  See National Ass'n for Gun Rights v. Lamont, 153 F.4th 213, 248 (2d Cir. 2025).[12]  In other words, the party seeking the preliminary injunctive relief must demonstrate that they will suffer an injury that cannot be remedied "if a court waits until the end of trial to resolve the harm."  Freedom Holdings, Inc. v. Spitzer, 408 F.3d 112, 114 (2d Cir. 2005) (quoting Rodriguez v. DeBuono, 175 F.3d 227, 234-35 (2d Cir. 1999)).

Plaintiffs' alleged irreparable harm boils down to this:  "Each day Plaintiffs are unlawfully delayed a license beyond six months, they are denied the ability to lawfully exercise their Second Amendment right to carry or possess firearms for self-defense."  Plaintiffs' Memo at 18.  Regardless of whether this allegation was sufficient to demonstrate irreparable harm at the time Plaintiffs' motion was filed, it is certainly not the case now.  As discussed above, each of Plaintiffs' applications have now been decided.  See Berkovich Decl. at ¶¶ 21-23.  The applications submitted by Cairney, Biancaniello, and Torres were approved by the License Division.  See id. at ¶¶ 21-23.  Thus, Cairney, Biancaniello, and Torres have no injury at all, let alone an injury that cannot be remedied in the absence of a preliminary injunction.  While the License Division denied Gottlieb's and DiSalvo's applications, that fact does not move the needle in Plaintiffs' favor.  The License Division determined that Gottlieb and DiSalvo did not present truthful applications, and, thus, lacked "good moral character."  See Berkovich Decl., Exs. E and F.[13]  Since the determination was based on a lack of "good moral character," Gottlieb

---

[12] The Second Circuit also declined to presume irreparable harm based simply on the allegation that plaintiffs were deprived of their Second Amendment rights, noting that the United States Supreme Court has not extended this principle outside of the First Amendment context.  See id.

[13] Gottlieb and DiSalvo were denied pursuant to Title 38, Section 5-10 of the Rules of the City of New York ("RCNY").  This section lists the permissible grounds for denial of a handgun license. The factors listed therein – 38 RCNY §§ 5-10(a)-(n) – provide guidance for the licensing officer making the "good moral character" determination.

19

and DiSalvo are not entitled to a firearms license.  See New York Penal Law § 400.00(1)(b) ("No license shall be issued … except for an applicant … of good moral character…").  As such, any delay in deciding their application is now of no consequence.[14]

Thus, Plaintiffs fail to satisfy the single most important factor for the issuance of a temporary restraining order/preliminary injunction, and their motion should be denied.

**B.     Plaintiffs cannot demonstrate a substantial likelihood of success on the merits.**

Plaintiffs appear to assert an as-applied Second Amendment claim premised on the argument that "New York City's firearm licensing scheme imposes unconstitutional delays that prevent law-abiding citizens from exercising their Second Amendment rights."  Plaintiffs' Memo at 6.  This argument is derived from a portion of a single footnote in Bruen leaving open the door to a constitutional challenge where "lengthy wait times in processing license applications or exorbitant fees deny ordinary citizens their right to public carry."  597 U.S. at 38 n.9.  Plaintiffs' as-applied challenge, however, is a house of cards that collapses upon closer examination.  It is lacking in supporting case law, detached from reality, and strangely relies upon the heartbreaking disappearance of Nancy Guthrie to prop itself up.

**1.  Second Circuit case law does not support Plaintiffs' argument.**

Despite the attention that footnote 9 has garnered in the wake of Bruen, no case in the Second Circuit has developed a framework for reviewing as-applied claims based on excessive delay.  Nor can Plaintiff point to any decision sustaining such a claim.  In fact, the Second Circuit has indicated that a litigant seeking to challenge a permitting scheme based on

---

[14] To the extent Plaintiffs argue that the denials injured Gottlieb and DiSalvo, they retain remedies at the administrative level, and any challenge herein would not yet be ripe.  See Berkovich Decl. at 26; Penal Law § 400.00(4-a).

delay faces a high bar.  In Giambalvo v. Suffolk Cnty., 155 F.4th 163, 183-84 (2d Cir. 2025), the Second Circuit rejected the plaintiffs' attempt to prescribe a bright-line thirty day time limit, finding such a timeframe arbitrary and disagreeing that thirty days is *per se* sufficiently lengthy to violate the Second Amendment.  In dicta, the Second Circuit suggested, however, that Suffolk County's two to three *year* review process would likely constitute "lengthy wait times" under Bruen.  See id. at 184.  That, of course, is a far cry from the bright-line six-month time limit that the Plaintiffs here suggest.  Further, in Frey v. City of New York, 157 F.4th 118, 141 (2d Cir. 2025), the Court upheld the City's special permit requirement (Penal Law § 400.00(6)) even though having to seek permission from an additional jurisdiction would impose some delay.

While Giambalvo and Frey do not perfectly answer the precise question presented here, they are instructive, and certainly not helpful to Plaintiffs' cause.  First, they seem to prefer a flexible, case-by-case review to arbitrary, bright-line deadlines.  Second, the Second Circuit suggests that excessive wait times would be measured in years, rather than mere months.  Finally, they reject Plaintiffs' analytical approach.  Plaintiffs contend that "Defendants cannot satisfy their burden of identifying any historical analogue showing that prolonged non-adjudication of carry-license applications – particularly beyond the governing regime's own outer processing benchmark of six months – comports with the Second Amendment."  Plaintiffs' Memo at 8.  However, neither Giambalvo nor Frey conducted a full Bruen step two analysis with respect to delay.[15]  Moreover, the level of precision required by Plaintiffs' description of the City's burden has been squarely rejected by the Supreme Court.  In United States v. Rahimi, 602

---

[15] This approach is consistent with how courts have addressed claims of "exorbitant fees," which, as noted above, was discussed by the Supreme Court in the same footnote as "lengthy wait times."  See N.Y. State Firearms Ass'n v. James, 157 F.4th 232, 247-49 (2d Cir. 2025) (deciding challenge to fee provision at the first step of Bruen as part of plain-text inquiry); Mills v. N.Y.C., 758 F. Supp. 3d 250, 267-78 (S.D.N.Y. 2024); Giambalvo, 155 F.4th at 182.

21

U.S. 680 (2024), the Supreme Court took the opportunity to clarify <u>Bruen</u> and respond to criticism that the <u>Bruen</u> framework was too rigid.  Accordingly, the <u>Rahimi</u> Court explained that municipalities are not required to identify historical twins and nothing in the Court's precedents was meant "to suggest a law trapped in amber." <u>Id.</u> at 691, 701.

### 2. New York City's licensing system has not been put toward abusive ends.

The rejection of bright-line deadlines for evaluating claims of excessive wait times finds support in <u>Bruen</u> itself.  In that same footnote 9, the Court suggests that its concern lies only with permitting schemes that are put towards *abusive* ends.  <u>See</u> Bruen, 597 U.S. at 38 n.9.  Identifying those permitting regimes requires a case-by-case analysis, rather than the application of an inflexible rule.  Upon closer examination, it is clear that New York City is not applying its licensing process for abusive purposes or to frustrate the exercise of Second Amendment rights.  <u>See</u> Berkovich Decl. at ¶18.

Despite the unprecedented avalanche of applications following <u>Bruen</u>, the License Division is reviewing applications more efficiently than ever.  <u>See</u> <u>id.</u> at ¶¶ 10, 20.  As detailed by Director Nicole Berkovich, the License Division "instituted a number of changes to streamline and expedite the application review process." <u>Id.</u> at ¶ 20.  These changes include informing applicants upfront as to the documents required to apply for a firearms license, and notifying applicants as soon as possible about incomplete applications.  <u>See</u> <u>id.</u>  As discussed below, the "good moral character" determination is a labor-intensive analysis, and complicated and delayed by the applicants themselves who often, whether inadvertently or otherwise, fail to include required documents/information.  If License Division investigators do not have to repeatedly follow-up with applicants, that time can be more productively used to review and decide completed applications.  The changes instituted by the License Division have resulted in

record numbers of applications decided in 2025.  See id. at ¶ 10.  These are not the hallmarks of a licensing regimes that is put towards abusive ends.

### 3. Plaintiffs have not demonstrated non-compliance with Penal Law § 400.00(4-b)

As discussed above, Plaintiffs have not demonstrated that any delay on the part of the License Division is attributable to purposeful actions or systemic failures as opposed to the sudden, unprecedented increase in applications to possess firearms, particularly concealed carry applications, see id. at ¶ 10, or to widespread failure by applicants to submit all required documents/information.  Similarly, Plaintiffs have not even shown that the License Division fails to comply with the six-month time frame prescribed by Penal Law § 400.00(4-b).

Plaintiffs appear to draw broad conclusions from their own experiences.  But not all applications are created equal.  Rather, License Division investigators must often review the unique circumstances underlying an applicant's arrest(s), summons(es), and domestic incident(s) before they can make a finding as to "good moral character."  See id. at ¶ 19.  Licensing officers are not automatons acting without a modicum of discretion.  The individualized assessment of dangerousness called for by Penal Law § 400.00(1)(b) requires a comprehensive review and thoughtful analysis, not an impulsive decision.

Plaintiffs further neglect to mention that their own applications were missing several pieces of required documentation/information.  See id. at ¶¶ 22-25.  Notwithstanding the fact that their applications were incomplete, Plaintiff appear to argue that the Penal Law § 400.00(1)(b) clock started running upon "submission" of their applications, whether they were actually complete or not.  As explained by License Division Director Nicole Berkovich, however, "the License Division deems an application to be 'presented' for purposes of Penal

Law § 400.00(4-b) only once it is complete; in other words, an application is not complete until all required information/documentation is provided to the License Division." Id. at ¶ 17.

This is a logical reading of Section 400.00(4-b) of the Penal Law and aligns with how New York courts have interpreted similar administrative review deadlines. See Bibeau v. Vill. Clerk of Tuxedo Park, 145 A.D.2d 478 (2d Dep't 1988). The statute at issue there required the village's Planning Board to issue decisions on applications for new land plats within sixty days. See id. at 479. While the petitioners in the case had submitted a number of documents related to the application process, they had not yet filed a required environmental impact statement. See id. When sixty days passed with no decision, the petitioners filed an Article 78 proceeding, claiming that the Planning Board failed to act within the statutorily prescribed period. See id. The Appellate Division, Second Department rejected this argument, explaining that because the "petitioners [had] not yet submitted the" required statement, their application was incomplete, and their "demand for final plat approval by default was premature." See id.

Any contrary rule would lead to absurd results. Plaintiffs presumably believe that the six-month period begins to run as soon as an applicant submits some portion of the required documents. So, according to them, an applicant can submit an incomplete application to the License Division, wait six months to complete it, and then argue the very next day that the License Division has violated State law. That would render it nearly impossible for the License Division to conduct a thorough "investigation of *all* statements . . . in the application," as the Penal Law requires before rendering a decision. See Penal Law § 400.00(4) (emphasis added). The Penal Law affirmatively requires licensing officers to make an assessment of "good moral character." Penal Law § 400.00(1)(b). The License Division cannot make such a finding in the absence of a complete application. Indeed, taken to its logical conclusion, Plaintiffs'

24

interpretation would require the License Division to render a decision six months from the date an application is initiated, even if the application is *never* completed.  This Court should not adopt a reading of Section 400.00(4-b) that leads to such absurd results. See Long v. State of New York, 7 N.Y.3d 269, 273 (2006) ("[I]t is well settled that courts should construe [statutes] to avoid objectionable, unreasonable, or absurd consequences.").

Thus, even assuming that six months is the constitutional highwater mark for review of an application for a firearm license, Plaintiffs cannot demonstrate systemic non-compliance with Penal Law § 400.00(4-b).

### 4.  Plaintiffs cannot establish municipal liability.

Plaintiffs have not shown that the alleged violations of their Second Amendment rights were the result of a policy or custom of the City as is necessary for municipal liability. Not only do Plaintiffs fail to identify the specific policies that they seek to enjoin, but they also fail to show how such policies are the result of a conscious policy choice.

To establish liability against a local government under 42 U.S.C. § 1983 for an alleged deprivation of constitutional rights, a plaintiff must show that "the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." Connick v. Thompson, 563 U.S. 51, 60 (2011) (quoting Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 692 (1978). Section 1983 does not impose vicarious liability on municipalities; rather, local governments "are responsible only for 'their *own* illegal acts.'" Connick, 563 U.S. at 60. (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 479 (1986) (emphasis in original). Accordingly, "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell, 436 U.S. at 694. The term "'policy' generally implies a course of action

consciously chosen from among various alternatives." <u>Vives v. City of New York</u>, 524 F.3d 346, 350 (2d Cir. 2008).[16] A policy may be made by a legislative body or "a municipal official 'possessing final authority to establish municipal policy with respect to the action ordered.'" <u>Id.</u> at 350 (quoting <u>Pembaur</u>, 475 U.S. at 481) (brackets omitted).

Plaintiffs have failed to demonstrate—under any available theory of <u>Monell</u> liability—that a City policy or custom caused the alleged violation of their Second Amendment rights. A policy or custom can be established "showing [1] the existence of a formal policy, [2] a practice sufficiently widespread to constitute a custom, or [3] a policymaker's deliberate indifference to rights violations by his subordinates." <u>O'Kane v. Plainedge Union Free Sch. Dist.</u>, 827 F. App'x 141, 142 (2d Cir. 2020); <u>Iacovangelo v. Corr. Med. Care, Inc.</u>, 624 F. App'x 10, 13 (2d Cir. 2015). Under each theory of liability, the conduct must be such that it was sanctioned, expressly or implicitly, by a policymaking official or otherwise the deliberate choice of the municipality. <u>See</u> <u>Amnesty Am. v. Town of W. Hartford</u>, 361 F.3d 113, 126 (2d Cir. 2004). As Plaintiffs cannot specifically identify the policy choice that caused the alleged harms, they fail to establish municipal liability under <u>Monell</u>.

Plaintiffs seeking liability under a theory of deliberate indifference to their rights face a particularly high bar. Plaintiffs bear the burden of demonstrating that a "municipal action was taken with 'deliberate indifference' as to its known or obvious consequences. A showing of simple or even heightened negligence will not suffice." <u>Bd. of the Cnty. Comm'rs v. Brown</u>, 520 U.S. 397, 407 (1997). Deliberate indifference based on a municipality's failure to supervise requires a showing that "'the need for more or better supervision to protect against constitutional

---

[16] Indeed, to the extent Plaintiffs herein seek to hold the City liable for the licensing requirements set forth in Penal Law § 400.00, such a challenge must fail. The City cannot be held liable under <u>Monell</u> where it is required by state law to implement a statute, as it has not made a conscious choice to do so. <u>See</u> <u>Vives</u>, 524 U.S. at 352.

violations was obvious,' but that [a policymaker] made 'no meaningful attempt' to forestall or prevent the unconstitutional conduct." Amnesty, 361 F.3d at 127 (quoting Vann v. City of N.Y., 72 F.3d 1040, 1049 (2d Cir. 1995)). Similarly, in the context of failure to train, Plaintiffs must show that a municipality acted "with deliberate indifference in disregarding the risk that its employees will unconstitutionally apply its policies without more training." Id. at 129. Further, Plaintiffs must "identify a specific deficiency in the city's training program and establish that that deficiency is 'closely related to the ultimate injury,' such that it 'actually caused' the constitutional deprivation." Id. (quoting City of Canton v. Harris, 489 U.S. 378, 390 (1989)). As the Supreme Court emphasizes: "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Connick, 563 U.S. at 61.

Plaintiffs here allege deliberate indifference to them but fail to identify the exact nature of a purported deliberate policy choice that caused constitutional injury. Plaintiffs allege generically that their injuries are the result of "deliberate decisions regarding staffing, budgeting, and administration of the firearms licensing regime." FAC ¶ 85. They do not contend that a failure to train or supervise City employees has caused their purported injuries. Rather, they contend based on a novel theory of deliberate indifference that resource-allocation choices cumulatively caused harm. Moreover, Plaintiffs do not establish that the City was aware of the purported deficiencies in license application processing. Accordingly, Plaintiffs' assertions fall far short of the standard necessary to establish deliberate indifference Monell liability. See City of Canton, 489 U.S. at 390 (Under certain circumstances, "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need."). While Plaintiffs point generally to budgeting decisions as the causes of their injury (see

27

FAC ¶¶ 63, 85), they fail to demonstrate that such decisions "actually caused" the alleged harm. See City of Canton, 489 U.S. at 391; see also McDowell v. Brown, 392 F3d 1283, 1291 (11th Cir. 2004) (finding that a "generalized policy of understaffing" is insufficient to impose municipal liability). Here, Plaintiffs' allegations that the City has been deliberately indifferent to their rights are belied by various improvements to processes for reviewing applications. See Berkovich Decl. at ¶ 20.

Plaintiffs' claim that generalized policy choices, such as budgeting and staffing decisions, led to delays in application processing fails to show a causal link required for Monell liability. Nor do Plaintiffs show that the City was so aware of the likelihood of the alleged harm yet made "no meaningful attempt" to prevent it as needed to show deliberate indifference. See Amnesty, 361 F.3d at 127.

### 5. Plaintiffs lack standing to seek prospective injunctive relief

"For each form of relief sought, a plaintiff 'must demonstrate standing separately.'" Nicosia v. Amazon, Inc., 834 F.3d 220, 239 (2d Cir. 2016) (quoting Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 185 (2000). "Although past injuries may provide a basis for standing to seek money damages, they do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way." Id. Plaintiffs seeking injunctive relief must, therefore, show that they are "immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." L.A. v. Lyons, 461 U.S. 95, 102 (1983) (internal quotation marks omitted). Accordingly, where plaintiffs seek an injunction against a local government, they must establish not only the existence of an official policy under Monell but also a likelihood of future harm. Shain v. Ellison, 356 F.3d 211, 216 (2d Cir. 2004) (finding that although the plaintiff had

standing for damages and declaratory relief on his <u>Monell</u> claim, he lacked standing for injunctive relief) (<u>citing</u> <u>Lyons</u>, 461 U.S. at 105–106).

Here, not only is the injunctive relief sought by Plaintiffs now moot, but they also cannot establish ongoing harm or a likelihood of future harm.  All five Plaintiffs have been issued determinations on their firearm license applications; they are no longer awaiting any action from the License Division. <u>See</u> Berkovich Decl. ¶¶ 21-25. To the extent Plaintiffs assert that they will suffer future harm from a purported policy or custom in license application processing, Plaintiffs point only to future renewal applications. <u>See</u> Declaration of Jose Torres, Docket Entry No. 8-2 at ¶ 8.  This does not provide a likely source of future harm, however. While state and local law require licensees to submit applications to renew their licenses every three years, the relevant statute ensures that any conceivable delay will not affect an individual's licensure status; as long as a licensee timely submits a renewal application, their license remains active. <u>See</u> Penal Law.§ 400.00(10) ("Any application to renew a license that has not previously expired, been revoked or cancelled shall thereby extend the term of the license until disposition of the application by the licensing officer."). Moreover, potential harm in three years, when Plaintiffs intend to submit renewal applications, falls far short of the "real and immediate" standard for injunctive relief.[17]  <u>See</u> <u>Lyons</u>, 461 U.S. at 102.  As noted in the Berkovich Decl., the renewal application process is typically streamlined relative to initial applications and tends to move more quickly. <u>See</u> Berkovich Decl. at ¶ 29.  The License Division is engaged in ongoing monitoring of "incidents" that may bear on any current licensee's "good moral character," so the

---

[17] Plaintiffs DiSalvo and Gottlieb have not stated an intent to appeal the disapprovals of their applications. However, even if they had, Plaintiffs fail to allege any facts at all regarding the City's appeal process, much less facts sufficient to show an unconstitutional policy or custom. Accordingly, Plaintiffs fail to establish both standing and municipal liability necessary for prospective injunctive relief.

29

renewal application background investigation is typically abbreviated.  See id.  Accordingly, Plaintiffs cannot establish a likelihood of future injury and, therefore, lack standing for prospective injunctive relief.

**C.      Plaintiffs have not shown that the balance of equities and public interest favor injunctive relief.**

The Supreme Court's decision in Bruen resulted in the invalidation of a requirement that was in place for over one hundred years.  While the decision was celebrated by some, it expanded the core of the Second Amendment right dramatically and opened the floodgates to tens of thousands of new applications.  The NYPD License Division had to adjust on the fly to this new reality.  In doing so, they had to juggle the presumptive six-month time limit set by Penal Law § 400.00(4-b) with the edict from that very same statute that no person lacking in "good moral character" shall possess a firearm.  See Penal Law § 400.00(1)(b).  Under the circumstances, the License Division has done a more than admirable job.  Now, Plaintiffs seek to enjoin an unidentified number of supposed policies and practices that they allege result in excessive and unconstitutional delay.  The contours of this proposed injunction are inconsistent with Federal Rule of Civil Procedure 65(d) as it will likely restrain legal conduct and provide insufficient guidance of what conduct is actually prohibited.  The consequences of an injunction of this magnitude cannot be precisely forecasted, but one can predict that they will not be positive.  The injunction is also unnecessary as the License Division is actually deciding tens of thousands of applications per year.  Preliminary injunctive relief, therefore, is most definitely not in the public interest.

Moreover, Plaintiffs' interest in such relief is negligible.  Plaintiffs already obtained the very result they sought to achieve from this motion – decisions on their outstanding applications.  As such, their claims are moot.  This fact also eliminates any possibility of

demonstrating irreparable harm.  Nor can Plaintiffs simply maintain that the vindication of their constitutional rights tips the equities in their favor.  See Plaintiffs' Memo at 18-19.  For all the reasons discussed above, Plaintiffs are not likely to prevail on their claims for declaratory or injunctive relief premised upon a violation of the Second Amendment.

Thus, Plaintiffs have not successfully established that the balance of equities weigh in their favor and that a preliminary injunction is in the public interest.

## CONCLUSION

For all the reasons set forth herein, the court should deny Plaintiffs' motion for a temporary restraining order/preliminary injunction in its entirety with such other and further relief as this court deems proper.

Dated:          New York, New York
                February 27, 2026

STEVEN BANKS
Corporation Counsel of the City of New York
Attorney for Defendants
100 Church Street
New York, New York  10007
(212) 356-4036

By:  _____/s/_____
                NICHOLAS R. CIAPPETTA

31